```
UNITED STATES BANKRUPTCY COURT           NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
In re:                              :
                                    :    Chapter 7
GENERAL VISION SERVICES, INC.,      :    Case No. 99-10105 (SMB)
                                    :
                Debtor.             :
------------------------------------X
NED STEINFELD,                      :
                                    :
                Plaintiff,          :
                                    :
        -against-                   :
                                    :    A.P. No. 05-01032 (SMB)
RICHARD A. EISNER & CO., LLC.,      :
RALPH BALSAMO and SHELBY GOLDGRAB,  :
                                    :
                Defendant.          :
------------------------------------X
```

**OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A P P E A R A N C E S:**

GOLDBERG, RIMBERG & FRIEDLANDER, PLLC
Attorneys for Plaintiff Ned Steinfeld
115 Broadway, 3rd floor
New York, NY 10006

    Robert M. Rimberg, Esq.


BRAUNER BARON ROSENZWEIG & KLEIN, LLP
Attorneys for Defendants Richard A.
   Eisner & Co, LLC and Ralph Balsamo
61 Broadway, 18th Floor
New York, New York 10006

    Howard L. Simon, Esq.
    Alison C. Gilbert, Esq.

MELITO & ADOLFSEN PC
Attorneys for Defendant Shelby Goldgrab
233 Broadway
New York, NY 10279

    John H. Somoza, Esq.

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge**

    The plaintiff, Ned Steinfeld, commenced this adversary proceeding against the actual or putative members of a court-appointed management committee charging them with breach of fiduciary duty and conversion. The defendants moved to dismiss on the ground, <u>inter alia</u>, that some or all of the claims were barred by the statute of limitations. Having converted the motion to one for summary judgment, the Court concludes that any claims accruing prior to July 2, 2000, are time-barred.

BACKGROUND

    Steinfeld is an optometrist. The debtor, General Vision Services, Inc. ("GVS"), ran a chain of optical stores that provided optometry services and sold eyewear. Pursuant to a Joint Venture Agreement, dated August 28, 1995, as modified by the First Amendment To Joint Venture Agreement, dated March 1, 1998 (collectively, the "Agreement"), Steinfeld and GVS agreed to

2

operate two existing GVS stores located in the Bronx.[1]

The Agreement, which was governed by New York law, (Agreement, at ¶ 16), contained the following material terms relating to Steinfeld's property interests and rights to payment:

1. The joint venture owned and operated the stores, and each joint venturer owned an undivided one-half interest in the joint venture and its property, including all of the tangible and intangible property located at the two stores. (Agreement, at ¶ 1.)

2. GVS was obligated to pay Steinfeld compensation for his services in the form of a _per diem_ and a weekly consulting fee, six weeks paid vacation annually, and other benefits, including the use of a car, insurance, a corporate credit card and reimbursement for his travel and entertainment expenses. (Id., at ¶ 3.)

3. GVS was obligated to pay one-half of the monthly profits to each of the joint venturers by the 25th day of the following month. (Id., at ¶ 4.)

**A.   The Management Order**

Involuntary chapter 11 petitions were filed against GVS and co-debtor Action Industries on April 16, 1999. Thereafter, the petitioning creditors moved for the appointment of an interim trustee. The petitioners' motion and the involuntary petitions were resolved through a stipulation and order dated September 9,

---

[1] A copy of the Agreement is annexed to the Declaration [of Robert L. Rimberg] in Opposition to Motion to Dismiss, dated Mar. 16, 2005 ("Rimberg Declaration") (ECF Doc. # 11) as Exhibit A. All references are to the original 1995 agreement.

1999 (the "Management Order").[2]

The Management Order contained three important components. First, the debtors consented to orders for relief under chapter 11. Second, the parties agreed to a management structure. Jim Jedrlinic would continue as debtors' chief executive officer and manage GVS' day-to-day operations, but a Management Committee consisting of Jedrlinic, Ralph Balsamo[3] and Shaul Kopelowitz would manage and review the debtors' operations until plans were confirmed and became effective, or until further order of the Court. Jedrlinic was required to consult with the other two members on a regular basis, but no less than twice each week. A majority vote of the members of the Management Committee was required before any business decisions or transactions outside of the ordinary course of business could be effectuated.

Third, the Management Order established several safeguards over financial matters. Balsamo was authorized to review all receipts and disbursements until further order of the Court, and to review the current operations of GVS, including its business plans, systems, budgets and cash flow. All checks, wire transfers and

---

[2] A copy of the Management Order is annexed to the Rimberg Declaration as Exhibit B.

[3] Balsamo was a partner in or member of the defendant Richard A. Eisner & Company, LLC ("Eisner"), an accounting firm.

4

cash payments in excess of $500 had to be submitted to Balsamo and the Reliance Savings Bank ("Reliance"). No payments could be made unless first approved by Balsamo and Reliance. If Balsamo disapproved a payment, the Management Order established a procedure for overriding his veto.

The parties anticipated that Kopelowitz might decline to serve on the Management Committee. The Management Order provided that if he resigned, Shelby Goldgrab would replace him. Kopelowitz resigned that very day, and Goldgrab took his place.

**B.    The Disputes Between Steinfeld and GVS**

Steinfeld and GVS continually fought over the compensation and profits payable to Steinfeld under the Agreement. In January 2000, Steinfeld moved to compel the payment of his compensation as an administrative claim, and to recover his share of the joint venture profits (the "Steinfeld Motion"). He argued, <u>inter alia</u>, that the profits were not property of the estate, and had been converted by GVS. (<u>See</u> <u>Affidavit of Howard L. Simon in Support of the Motion of Defendants Richard A. Eisner & Co. and Ralph Balsamo to Dismiss Complaint in Adversary Proceeding</u>, sworn to Feb. 10, 2005("<u>Simon Affidavit</u>"), Ex. F.) (ECF Doc # 4.) Steinfeld asked the Court to prohibit GVS from using Steinfeld's cash collateral and to compel GVS to account for and segregate the property of the joint venture.

5

(Id., at ¶ 25.)

The Steinfeld Motion drew strong opposition from GVS and the Official Committee of Unsecured Creditors (the "Committee"). (See Supplemental Affidavit of Howard L. Simon In Support of Defendants' Motions for Summary Judgment, sworn to May 26, 2005 ("Simon Supplemental Affidavit"), Ex. C)(ECF Doc. # 15.)  The part of the Steinfeld Motion relating to the payment of his compensation was resolved by an order, dated Feb. 16, 2000.  (See Rimberg Declaration, Ex. D.)  The order directed GVS to pay Steinfeld $31,134.75, the accrued post-petition compensation due under Section 3 of the Agreement, and to continue to pay the joint venture compensation on a going-forward basis.

The part relating to the joint venture profits was resolved by a Stipulation and Order, dated Apr. 11, 2000 (the "April Order"). (See Simon Supplemental Affidavit, Ex. E.)  The April Order included the following provisions:

1. Effective with the period beginning March 1, 2000, GVS would pay Steinfeld his one-half share of the joint venture profits pursuant to the terms of the Agreement. (April Order, at ¶ 1.)

2. The April Order superseded the Court's prior direction compelling GVS to segregate the Joint Venture profits as cash collateral. (Id., at ¶ 6.)

3. The April Order was "without prejudice to the parties' respective positions on all other aspects of Steinfeld's Motion and any other action, proceeding, claim, defense,

6

        contested matter or dispute between them." (Id., at ¶ 5.)

During the latter part of 2000, GVS sold all of its assets to a third party. By order dated March 13, 2001, the Court converted the GVS case to one under chapter 7. (Rimberg Declaration, Ex. K.)

**C.   The Parties' Litigations**

Steinfeld commenced a state court action against these same three defendants on July 2, 2003. He charged that the defendants improperly withheld approximately $500,000 in joint venture profits that were owed to Steinfeld under the Agreement. He sought $1 million in damages under theories of conversion, breach of fiduciary duty and negligence. (See Affirmation [of John H. Somoza] in Support [of Motion to Dismiss], dated Feb. 10, 2005 ("Somoza Afffirmation"), Ex. G, passim) (ECF Doc. # 7.) By order filed July 15, 2004, the state court granted the defendants' motions to dismiss the complaint for lack of subject matter jurisdiction. (See Simon Affidavit, Ex. B.)

Steinfeld commenced this adversary proceeding on January 12, 2005, or within six months of the filing of the earlier dismissal order. The Complaint purported to assert three causes of action. The first charged that the defendants owed fiduciary duties to Steinfeld and GVS, and breached those duties (and were also

7

      contested matter or dispute between them."  (Id., at ¶ 5.)

During the latter part of 2000, GVS sold all of its assets to a third party. By order dated March 13, 2001, the Court converted the GVS case to one under chapter 7. (Rimberg Declaration, Ex. K.)

**C.   The Parties' Litigations**

Steinfeld commenced a state court action against these same three defendants on July 2, 2003. He charged that the defendants improperly withheld approximately $500,000 in joint venture profits that were owed to Steinfeld under the Agreement. He sought $1 million in damages under theories of conversion, breach of fiduciary duty and negligence. (See Affirmation [of John H. Somoza] in Support [of Motion to Dismiss], dated Feb. 10, 2005 ("Somoza Afffirmation"), Ex. G, passim) (ECF Doc. # 7.) By order filed July 15, 2004, the state court granted the defendants' motions to dismiss the complaint for lack of subject matter jurisdiction. (See Simon Affidavit, Ex. B.)

Steinfeld commenced this adversary proceeding on January 12, 2005, or within six months of the filing of the earlier dismissal order. The Complaint purported to assert three causes of action. The first charged that the defendants owed fiduciary duties to Steinfeld and GVS, and breached those duties (and were also

7

negligent) by failing to pay Steinfeld and by failing to monitor the GVS board. (Complaint, at ¶¶ 63-71.) The second asserted that the defendants, negligently and in breach of their fiduciary duties to Steinfeld, allowed GVS to convert and withhold the sums owed to Steinfeld. (Id., at ¶¶ 73-83.) The third alleged that the defendants converted money due to Steinfeld under the Agreement. (Id., at ¶¶ 85-89.)

The defendants moved to dismiss on the ground that most if not all of the claims were time-barred. The parties agreed that pursuant to N.Y.C.P.L.R. 205(a), the statutes of limitations applicable to Steinfeld's claims stopped running on July 2, 2000, the date he commenced the state court action. According to the defendants, a three-year statute of limitations governed all of the claims, see id., § 214, and any claims that accrued more than three years before July 2, 2003 were barred.[4]

At the initial hearing, the Court informed the parties that

---

[4] In general, Steinfeld agreed that the three year statute of limitations governed his claims. However, in a footnote tucked away at the end of his opposition memorandum, he argued that the complaint also pleaded a claim for breach of constructive trust which was subject to a six year statute of limitations. (Memorandum of Law in Opposition to Motions to Dismiss Adversary Proceeding, dated Mar. 16, 2005, at 7-8 n.6) (ECF Doc. # 11.) Eisner and Balsamo aptly described this argument as a "throw away," and I agree with their analysis that the complaint failed to allege the elements of a constructive trust claim. (See Reply Memorandum of Law in Further Support of Motion of Defendants Eisner and Balsamo to Dismiss the Amended Complaint, dated Apr. 4, 2005, at 1 n.2) (ECF Doc. # 10.)

8

since they had introduced material outside of the four corners of the complaint, the motion would be treated as one for summary judgment. The Court also expressed skepticism regarding the breach of fiduciary duty claim, and asked the plaintiff to brief the basis of the defendants' fiduciary duties to Steinfeld (as opposed to the estate or the creditor body as a whole).

Steinfeld failed to provide legal support for his fiduciary duty claim, and basically withdrew it at the next hearing when he clarified his theory. The essence of his claim is that the defendants (or GVS) converted his joint venture profits as trustees for his benefit, and either personally converted or allowed GVS to convert those sums, or refused to pay them to Steinfeld. (Transcript of hearing, held Aug. 2, 2005 ("Tr."), at 19)(ECF Doc. # 25.) Steinfeld also argued that his claims were not time-barred based on various tolling doctrines discussed below.

## DISCUSSION

### A.    Eisner's and Goldgrab's Separate Defenses

Eisner and Goldgrab made additional arguments to dismiss the complaint, and these are addressed first. Eisner argued that all of the claims asserted against it in the complaint should be dismissed because it never served on the Management Committee. The Management Order does not refer to Eisner; instead, it appoints

9

Balsamo to serve on the Management Committee.

Although the Management Order does not mention Eisner, there is evidence that the parties nevertheless intended Eisner to be the member of the Management Committee, and Balsamo to act as Eisner's representative on it. First, GVS (and Action) understood that the proposed Management Order was intended to retain Eisner, "including Mr. Balsamo of that firm to serve as a member of the Management Committee" (See Declaration [of Ned Steinfeld] In Opposition to Motion to Dismiss, dated June 30, 2005, Ex. M., at ¶ 12)(ECF Doc. # 19.) Second, Eisner submitted an affidavit in support of its retention as a member of the Management Committee. (See Rimberg Declaration, Ex. F.) Consequently, this aspect of Eisner's motion for summary judgment is denied without prejudice.

Goldgrab contended that he resigned from the Management Committee in January 2000, (see Somoza Affirmation, Ex. C), and hence, cannot be liable for the acts that occurred after that date. As noted, the Management Order did not originally appoint Goldgrab. Instead, it appointed Kopelwitz with the proviso that if he was unable to serve, "the parties shall jointly apply to the Bankruptcy Court for the retention . . . of Goldgrab to replace Mr. Kopelowitz." (Management Order, at 2.)

Kopelwitz resigned immediately, but the Court's electronic docket does not reflect an application to retain Goldgrab, or an order approving his retention.[5]  Nevertheless, all parties, including Goldgrab, agree that Goldgrab became a member of the Management Committee in lieu of Kopelowitz.  The parties' failure to adhere to the requirement for retention in the Management Order should not serve to shield Goldgrab who concedes that he assumed the duties as a member.

The members of the Management Committee were not free simply to quit.  The Management Order stated that the members of the Management Committee would manage and review GVS's operations until a plan was confirmed and became effective, <u>or upon further order of the Court.</u>  (<u>Id.</u>)  Like an attorney, Goldgrab required a court order (or plan confirmation and effectiveness) to relieve him of the duty to manage and review GVS's operations.

This restriction made sense.  The outside members were installed, in part, to resolve a motion to appoint a chapter 11 trustee.  If the outside Management Committee members could resign without a Court order, they could unilaterally eviscerate the settlement of the trustee motion.  Consequently, while no one could

---

[5]   The plaintiff attached unsigned retention orders to his submissions.  (<u>See, e.g.</u>, <u>Rimberg Declaration</u>, Ex. C.)

force Goldgrab to serve after he decided not to, his abandonment of his de facto membership on Management Committee did not relieve him of the obligations he voluntarily assumed.

**B.   The Statute of Limitations Defense**

For statute of limitations purposes, a claim for conversion accrues under New York law at the moment of the conversion, and not when the plaintiff discovers it.  Lennon v. Seaman, 63 F. Supp. 2d 428, 440 (S.D.N.Y. 1999); Seneca Ins. Co. v. Wilcock, No. 01 Civ. 7620 (WHP), 2002 WL 1067828, at *6 (S.D.N.Y. May 28, 2002); see Sporn v. MCA Records, Inc., 448 N.E.2d 1324, 1327 (N.Y. 1983)(cause of action for conversion accrues for statute of limitations purposes when the conversion occurs).  Under the April Order, GVS was required to pay Steinfeld his share of the profits each month.  Assuming that Steinfeld enjoyed a property right in his share of the profits – an issue I do not decide – a new cause of action arose each time the defendants converted his property.[6]  Accordingly, any conversions that occurred within three years of July 2, 2003, are timely.

---

[6] Steinfeld's second cause of action charged that the defendants negligently and in breach of their fiduciary duties allowed GVS to convert and withhold the sums due Steinfeld. (See Complaint, at ¶¶ 73-83.)  The defendants' papers did not distinguish between claims of actual conversion by the defendants and claims that they allowed others to convert Steinfeld's property.  Accordingly, the Court will not draw the distinction either.

The April Order did not, as the defendants argued, necessarily provide a complete defense to the conversion claims. The April Order was entered prior to July 2, 2000. It relieved GVS of the duty to treat Steinfeld's monthly distribution of profits as "cash collateral" within the meaning of 11 U.S.C. § 363, or to segregate the monthly profits as "cash collateral" in accordance with that section.[7] The April Order expressly reserved the parties' other claims and defenses.

The segregation issue was related to but distinct from the disputed status of the monthly profits as Steinfeld's property or property of the estate. It is not clear that the April Order was intended to resolve this issue. Thus, while Steinfeld cannot complain of the failure to segregate the monthly profits after the April Order, he may still be able to argue that the joint venture profits were not estate property and belonged to him. The question may come down to whether he waived his conversion claims by consenting to the commingling of his property (assuming it was his property) with GVS's. The parties did not brief this issue, and the resolution must await another day.

---

[7]  The Supplemental Declaration [or Robert Rimberg] In Opposition To Motion To Dismiss, dated Aug. 9, 2005 , at ¶ 6) ("Supplemental Rimberg Declaration") (ECF Doc. # 22) erroneously stated that the April Order prohibited GVS from using Steinfeld's cash collateral, and imposed a duty on GVS to segregate it. This error is inexplicable in light of the unambiguous language in the April Order.

13

**C.    The Exceptions to the Statute of Limitations Defense**

In his initial opposition to the motion to dismiss, Steinfeld argued that the statute of limitations did not start to run on his breach of fiduciary duty claims until the conversion of the chapter 11 case and the disbandment of the Management Committee. Steinfeld has since abandoned his breach of fiduciary duty claim, and his tolling also fails. In any event, each failure to distribute his monthly profits gave rise to a separate claim for purposes of the statute of limitations, and the claims that accrued prior to July 2, 2000 are time-barred. See Butler v. Gibbons, 569 N.Y.S.2d 722, 723 (N.Y. App. Div. 1991).[8]

Steinfeld belatedly raised additional tolling theories after the motion was twice briefed and twice heard.[9] First, he maintained that the defendants should be equitably estopped from relying on the statute of limitations because he did not realize that GVS would not pay the past due joint venture profits as an administrative claim until the case was converted. (Supplemental Rimberg Declaration, at ¶¶ 11-14.) Until then, the Management

---

[8] Butler applied a six year statute of limitations to claims similar to those alleged in this case. Except for the constructive trust claim discussed above, Steinfeld has not contested the applicability of the three year period of limitations.

[9] The Court ultimately granted Steinfeld's request to brief his new theories, but denied him the right to submit additional affidavits. (Tr. at 28-29.) Steinfeld implied that additional affidavits were unnecessary because the documents in the public record supported his tolling arguments. (Id., at 35-36.)

14

Committee mislead Steinfeld through words and deeds into believing that he would be paid on an administrative basis on account of the converted property. (Id., at ¶¶ 27-32.)

Under New York law, "[t]he party asserting estoppel must show that he (1) lacked knowledge of the true facts; (2) relied upon the conduct of the party estopped; and (3) suffered a prejudicial change in his position as a result of the estopped party's conduct." Holmes v. Lorch, 329 F. Supp. 2d 516, 524 (S.D.N.Y. 2004); see Simcuski v. Saeli, 377 N.E. 713, 716 (N.Y. 1978)("It is the rule that a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.")

According to Steinfeld's attorney, Steinfeld understood that he was receiving only partial payments under the April Order. (Supplemental Rimberg Declaration, at ¶ 10.) He thought the balance would be paid as an administrative claim under a confirmed plan. It was only when the GVS case was converted to chapter 7 that he realized that the prior versions of the plan and disclosure payment, which promised payment of the balance, were illusory. (Id., at ¶¶ 10-14.)

15

Steinfeld interposed his equitable estoppel argument as an afterthought, without evidentiary support. The statement regarding Steinfeld's understanding was attorney hearsay,[10] and the "public record" did not bolster the contention. Furthermore, he failed to offer any proof that the defendants prepared the plan or disclosure statement, or made any representations regarding payment of the balance of his claim to the profits. Finally, he failed to offer proof that he relied on anything they said or did, or changed his position.

Steinfeld also belatedly invoked the doctrine of equitable tolling. Equitable estoppel and equitable tolling are closely related. The former applies when the plaintiff knows he has a cause of action, but is induced by the defendant to delay bringing suit. The latter applies when the defendant fraudulently conceals the existence of the cause of action, and the plaintiff does not know he has one. See Department of Economic Dev. v. Arthur Andersen & Co. (U.S.A.), 747 F. Supp. 922, 943 (S.D.N.Y. 1990).

While a federal doctrine of equitable tolling exists, it is applied "sparingly." See Family Golf Centers, Inc. v. Acushnet Co. (In re Randall's Island Family Golf Centers, Inc.), 288 B.R. 701,

---

[10] The declaration submitted by Steinfeld's attorney introduced new facts (which were not within his personal knowledge) and violated the Court's admonition regarding additional affidavits. The statements in the declaration may nonetheless qualify as admissions.

704 (Bankr. S.D.N.Y. 2003).  It is debatable whether a similar doctrine exists under New York law.  See Von Hoffmann v. Prudential Ins. Co., 202 F. Supp. 2d 252, 264 (S.D.N.Y. 2002); (equitable tolling is a federally created doctrine, and does not apply to state law cause of action); Nigerian National Petroleum Corporation v. Citibank, N.A., No. 98 Civ. 4960 (MBM), 1999 WL 558141, at *4. n.4 (S.D.N.Y. July 30, 1999)(same); Department of Economic Dev. v. Arthur Andersen & Co. (U.S.A.), 747 F. Supp. at 943 (same).  At most, equitable tolling under New York law is limited to situations where the defendant fraudulently concealed the cause of action from the plaintiff.  See Kotlyarsky v. New York Post, 757 N.Y.S.2d 703, 707 (N.Y. Sup. Ct. 2003).  Here, Steinfeld understood that he was not receiving all of his money; he just thought that the balance would eventually be paid as an administrative claim under a plan.

Finally, Steinfeld relied on the doctrine of part payment to toll the statute of limitations.  The doctrine is a limited one.  The creditor must show that the debtor paid "a portion of an admitted debt, made and accepted as such, accompanied by circumstances amount [sic] to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder."  Lew Morris Demolition Co. v. Board of Ed., 40 N.Y.2d 516, 521 (N.Y. 1976); accord Flynn v. Flynn, 572 N.Y.S.2d 307, 308-09 (N.Y. App. Div.

17

1991).

The doctrine is not applicable to Steinfeld's conversion claim. First, his claim is based on the misappropriation of his property; not on the failure to pay a debt. Second, the defendants did not owe Steinfeld a debt, GVS did. Third, Steinfeld failed to offer any evidence that the defendants admitted that they owed a larger debt, or of circumstances implying their promise to pay the remainder.

In conclusion, any conversion claims that accrued prior to July 2, 2000 are time-barred. The defendants' motions to dismiss these claims are granted, and their motions to dismiss any other claims is denied. The parties are directed to settle an order on notice, and to contact chambers to arrange a pre-trial conference.

So ordered.

Dated:    New York, New York
          October 24, 2005

                                    /s/ Stuart M. Bernstein
                                    STUART M. BERNSTEIN
                                Chief United States Bankruptcy Judge